UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------------X

TIFFANY GAINES,

                                 Plaintiff,

        -against-

THE CITY OF NEW YORK, THE NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, CORRECTION OFFICER "JANE DOE
WASHINGTON", *INDIVIDUALLY,* CORRECTION OFFICER "JANE
DOE KIT", *INDIVIDUALLY,* CORRECTION CAPTAIN "JOHN DOE
NEWLAND", *INDIVIDUALLY,* CORRECTION DOCTOR ROACH,
M.D., *INDIVIDUALLY,* AND BRANDON LEE, *INDIVIDUALLY*,

                                 Defendants.

-------------------------------------------------------------------------------------X

Docket No.:

**COMPLAINT**

**PLAINTIFF
DEMANDS
A TRIAL
BY JURY**

Plaintiff, TIFFANY GAINES, by her attorney, JESSICA MASSIMI, hereby complains of the

Defendants, upon information and belief, as follows:

## PARTIES, VENUE, AND JURISDICTION

1.  At all times mentioned herein, plaintiff, TIFFANY GAINES, was an adult female resident of
    the State of New York.

2.  At all relevant times mentioned herein, defendant CITY OF NEW YORK ("NEW YORK
    CITY" or "CITY"), was and is a municipal corporation duly organized and existing under
    and by virtue of the laws of the State of New York and acts by and through its agencies,
    employees and agents, including, but not limited to, the New York City DEPARTMENT OF
    CORRECTION ("DOC"), and their employees.

3.  At all times hereinafter mentioned, DEFENDANT CORRECTION OFFICER "JANE DOE
    WASHINGTON", was an adult female employed by the City of New York as a member of
    the DOC assigned to Rikers Island Correctional Facility, whose first name is currently

unknown to the Plaintiff and whose last name is believed to be WASHINGTON. Defendant Washington is sued herein in her official and individual capacities.

4. At all times hereinafter mentioned, defendant, DEFENDANT CORRECTION OFFICER "JANE DOE KIT", was an adult female employed by the City of New York as a member of the DOC assigned to Rikers Island Correctional Facility, whose first name is currently unknown to the Plaintiff and whose last name is believed to be KIT. Defendant Kit is sued herein in her official and individual capacities.

5. At all times hereinafter mentioned, defendant, DEFENDANT CORRECTION CAPTAIN "JOHN DOE NEWLAND", was an adult male employed by the City of New York as a member of the DOC assigned to Rikers Island Correctional Facility, whose first name is currently unknown to the Plaintiff and whose last name is believed to be NEWLAND. Defendant Newland is sued herein in his official and individual capacities.

6. Defendants "JANE DOE WASHINGTON", "JANE DOE KIT", and "JOHN DOE NEWLAND" are collectively referred to herein as the "INDIVIDUAL CORRECTION OFFICER DEFENDANTS."

7. At all relevant times, defendant, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION ("HHC"), was a municipal agency, an agency of the defendant CITY OF NEW YORK, and was responsible for providing health services and health care to detainees in the custody of the DOC, including those individuals detained or confined at Rikers Island Correctional Facility. In carrying out its duties and obligations, HHC was required to ensure that the personnel it employed at Rikers complied with all DOC, CITY OF NEW YORK, and HHC policies, procedures, directives, and protocols, in addition to all relevant local, state, and federal statutes and regulations.

8. At all times hereinafter mentioned, defendant, CORRECTION DOCTOR ROACH, M.D., was an adult male employed by Defendants CITY OF NEW YORK and HHC as a doctor of the DOC assigned to Rikers Island Correctional Facility.   CORRECTION DOCTOR ROACH, M.D.'s first name is currently unknown to the Plaintiff, but his last name is believed to be ROACH. Defendant Roach was responsible for the provision of appropriate medical care to patients at Rikers Island, including Plaintiff GAINES.   Defendant Roach participated in and/or had knowledge of and failed to intervene in, the denial of adequate medical care to GAINES as alleged herein. At all relevant times, defendant ROACH was acting under color of state law and within the scope of his capacities as an agent, servant, employee, and/or contracted personnel of defendants CITY OF NEW YORK and HHC. Defendant Roach is sued herein in his official and individual capacities.

9. At all times hereinafter mentioned, defendant, DEFENDANT BRANDON LEE, was an adult male inmate at Rikers Island Correctional Facility, whose rape of Plaintiff is the subject of this lawsuit. Defendant Lee is sued herein in his individual capacity. Defendant Lee is currently incarcerated at the Anna M. Kross Correctional Facility at Rikers Island Correctional Facility.

10. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

11. Venue is properly laid, pursuant to 28 U.S.C. § 1391, et seq., in the Southern District of New York, where the defendant City of New York resides, and where the majority of the actions complained of herein occurred.

12. The plaintiff timely served a Notice of Claim on the DEFENDANT CITY OF NEW YORK and complied with all conditions precedent to commencing an action under state law.

13. Plaintiff appeared for and testified at 50-H hearing as required by law.

14. At least thirty days have elapsed since service of plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

15. That the within action has been initiated within one year, and within one year and ninety days of the accrual of plaintiff's claims pursuant to New York State Law.

## MATERIAL FACTS

16. On April 17, 2019, plaintiff was an inmate in pen 14 of the prisoner holding area of the parole violation courthouse located at Rikers Island Correctional Facility in Bronx County, City and State of New York ("Rikers").

17. Plaintiff was being detained at Rikers on an alleged parole violation.

18. At about 11:00 a.m., defendant Correction Officer Washington moved plaintiff to pen 13 to allow plaintiff to use the bathroom.

19. Defendant Correction Officer Washington did not enter pen 13, closed and locked the door behind plaintiff, and then left plaintiff in pen 13.

20. Upon entering pen 13, plaintiff saw that defendant Lee was also inside of pen 13.

21. The individual Defendants intentionally placed plaintiff in the locked cell with defendant Lee for the purpose of facilitating plaintiff's rape by defendant Lee.

22. Defendant Lee then proceeded to rape plaintiff inside of pen 13.

23. Approximately 30 minutes after defendant Correction Officer Washington placed plaintiff inside of pen 13, defendant Correction Officer Kit came to unlock the door to pen 13 and remove plaintiff from the pen.

24. Earlier that same day, at about 9:30 a.m., defendant Correction Officer Kit approached plaintiff and gave plaintiff a piece of paper, at defendant Lee's request, with defendant Lee's name and contact information.

25. At about this time, all of the individual defendants, including defendant Lee, the individual correction defendants, and defendant Dr. Roach, formed an agreement with each other to allow plaintiff to be raped, and to cover-up and conceal the fact of plaintiff's rape and assault.

26. The individual correction defendants knew of and disregarded the excessive risk to plaintiff's health and safety in that they were aware of the fact that plaintiff would be placed in imminent danger and harm by placing plaintiff in a locked cell with a male inmate who had previously expressed to defendants a sexual interest in plaintiff.

27. Later that same day, on April 17, 2019, plaintiff was then taken to court for her appearance on her alleged parole violation. Upon arriving at the courthouse, plaintiff informed a female correction officer that she had been raped by defendant Lee at the parole violators holding area.

28. Upon information and belief, this correction officer, whose name is currently unknown to the Plaintiff, relayed Plaintiff's report to defendant Correction Captain Newland.

29. Defendant Newland then came to meet with Plaintiff and attempted to convince her not to follow through with any report of rape or assault.

30. After plaintiff was raped, while still incarcerated at Rikers Island, plaintiff asked for medical attention and to be given a rape kit test. Specifically, Plaintiff made this request to defendant Correction Captain Newland.

31. Despite defendant Newland's attempts to coerce plaintiff into withdrawing her rape allegations, plaintiff persisted and continued to tell defendant Newland that she had in fact been raped and that she needed medical attention, at least so that evidence could be collected from her.

32. Defendant Newland then took plaintiff to the Rose M. Singer facility at Riker's Island Correctional to speak to defendant Dr. Roach.

33. Plaintiff continued to request medical attention and to be given a rape kit test. Plaintiff made this request to Defendant Dr. Roach, who refused to give plaintiff any such medical testing or treatment on that day.

34. Defendant Dr. Roach further responded to plaintiff's request for medical treatment and rape kit following her rape by repeatedly telling plaintiff, in sum and substance, that she had not been raped.

35. Thus, as a result of the defendants' individual and collective persistent attempts to dissuade Plaintiff from filing any complaint of rape or from receiving any medical treatment for the rape, Plaintiff did not receive any medical treatment or rape kit related to her assault and rape.

36. The individual defendants worked together to facilitate plaintiff's rape and assault, and further worked together to cover up plaintiff's rape and assault by failing to provide her with appropriate medical attention and testing following her rape.

37. As a result of the assault alleged herein, and because of the failure of the Defendants to act consistently with their duties and obligations in their official capacities as DOC employees and correction officers under the authority of the defendant City of New York, plaintiff Tiffany Gaines incurred pain and suffering, psychological trauma, and physical injuries.

38. There are several video cameras located at the subject premises which are believed to have captured the violations complained of herein, or which are otherwise relevant to plaintiff's claims, and which are believed to be in the possession of one or more of the defendants named herein.

39. Further, the City of New York, the New York City Department of Correction, and/or the Bronx County District Attorney's Office have conducted a purported internal investigation(s) into the rape alleged by plaintiff.

40. By way of letter dated October 28, 2019, Avninder Aujla, the Assistant General Counsel for the New York City Department of Correction informed Petitioner's former counsel that there was an open, ongoing investigation related to Petitioner's allegations under investigation number N0666/2019. Specifically, attorney Aujla wrote as follows:

> This is a response to your request for records (copy enclosed) made pursuant to the New York State Freedom of Information Law. Please be advised that this is an open, ongoing investigation. (N0666/2019) This case is currently with the Bronx District Attorney's Office for review.
>
> Pursuant to the New York State Public Officers Law, Section 87(2)(g)(iii), such records may consist of intra-agency material which is not a final agency determination and can be withheld. In addition, potentially responsive records are still being generated. The Department, under the New York State Freedom of Information Law, is not obligated to create new records in order to respond to your request.
>
> Pursuant to New York State Public Officers Law Section 89(4), you may, within thirty (30) days of receiving this letter, submit an appeal to Records Appeal Office, at the above address.

41. Upon information and belief, these purported investigations are still pending.

42. Finally, a Prison Rape Elimination Act ("PREA") investigation was conducted regarding Petitioner's April 17, 2019 rape, pending under Claim Number 19/04456.

43. Each of these investigations were commenced based on complaints Plaintiff filed regarding her rape as described herein.

44. At no time did any of the defendants, or any other member of the DOC, CITY, or HHC, take any steps to intervene in, prevent, or otherwise limit the heretofore conduct engaged in by their fellow officers.

7

45. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the CITY's and HHC's interests and without legal justification or excuse.

**AS A FIRST CAUSE OF ACTION**
**AGAINST THE INDIVIDUAL CORRECTION OFFICER DEFENDANTS**
**FOR VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS AND**
**PLAINTIFF'S RIGHT TO DUE PROCESS**
**<u>PURSUANT TO 42 U.S.C. SECTION 1983</u>**

46. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

47. The INDIVIDUAL CORRECTION DEFENDANTS violated plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution by intentionally incarcerating and confining plaintiff under conditions which posed a substantial risk of serious harm to plaintiff's safety.

48. The INDIVIDUAL CORRECTION DEFENDANTS violated plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution by failing to take reasonable measures to guarantee plaintiff's safety, and by conspiring and working together to conceal the fact of plaintiff's rape and to deny her medical treatment.

49. Specifically, the INDIVIDUAL CORRECTION DEFENDANTS actively facilitated plaintiff's rape by another inmate, and therefore failed to protect plaintiff from violence.

50. The INDIVIDUAL CORRECTION DEFENDANTS knew of and disregarded the excessive risk to plaintiff's health and safety in that they were aware of the fact that plaintiff would be placed in imminent danger and harm by placing plaintiff in a locked cell with a male inmate.

51. By so doing, the INDIVIDUAL CORRECTION DEFENDANTS subjected plaintiff to violations of her right to due process and thereby violated and aided and abetted in the

violations of plaintiff's rights under the Fourth, Eight, and Fourteenth Amendments to the United States Constitution.

52. By reason thereof, the INDIVIDUAL CORRECTION DEFENDANTS have violated 42 U.S.C. Section 1983 and caused plaintiff to suffer the deprivation of her liberty, loss of her constitutional rights, physical injuries, and mental anguish.

**AS A SECOND CAUSE OF ACTION
AGAINST THE CITY OF NEW YORK
FOR MUNICIPAL LIABILITY
FOR VIOLATION OF CIVIL RIGHTS
PURSUANT TO 42 U.S.C. SECTION 1983**

53. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

54. In light of the foregoing, defendants recklessly and intentionally caused plaintiff to sustain serious and permanent personal injuries, notwithstanding their knowledge that said conduct would jeopardize Plaintiff's liberty, well-being, safety, and violate her constitutional rights.

55. The acts complained of were carried out by the aforementioned individual defendants in their capacities as correction officers and officials, with all of the actual and/or apparent authority attendant thereto.

56. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as correction officers and officials pursuant to the customs, policies, usages, practices, procedures, and rule of the CITY and the DOC, all under the supervision of ranking officers of said department.

57. Those customs, policies, patterns, and practices include, but are limited to:

    i.    requiring correction officers to be unnecessarily punitive in the course of their duties and obligations;

ii.    failing to take any measures to correct unconstitutional behavior when brought to the attention of supervisors and/or policy makers;

iii.    failing to protect inmates from assault by other inmates;

iv.    failing to seek necessary medical attention for injured inmates;

v.    failing to properly train corrections officers in the requirements of the United States Constitution.

58. For example, in *Madera v. The City of New York, et al.,* 8 CV 1509 (PKC), Plaintiff Antonio Madera alleged that various Rikers correction officers "formed an agreement with inmates at RMDC to allow plaintiff to be assaulted [and then] knowingly allowed inmates to assault plaintiff while [one Rikers guard] sat outside the dayroom, only intervening when a Captain was arriving."

59. The facts alleged in this lawsuit served as a basis for an article by the New York Daily News titled "Secrets of Sadistic Rikers Island Society." The article reported as follows:

On the day Antonio Madera arrived at Rikers Island in 2006 on robbery charges, a group of inmates sat him down and told him the score. Guards, they said, were running a sadistic secret society called "The Program." The officers allowed a cadre of inmate enforcers, known as "The Team," to shake down and brutally assault other prisoners.

"Not only did [the guards] just watch," Madera, 20, told the Daily News in an exclusive jailhouse interview yesterday, "in some cases, they participated."

60. The article can be found here: https://www.nydailynews.com/new-york/secrets-sadistic-rikers-island-society-article-1.422289.

61. The defendant City of New York eventually settled Madera's lawsuit for $22,500.00.

62. On September 21, 2017, the New York Times reported on several inmate on inmate rapes and sexual assaults at Rikers, reporting at follows:

The sexual assaults went on for two days in April. A female inmate raped her cellmate on Rikers Island with a makeshift sexual device, according to prosecutors. The whole time the cell was under video surveillance.

The same inmate had raped another woman on several occasions in October and November last year in different areas of the same jail, the Rose M. Singer Center, an indictment charges. One time the victim was beaten and raped in a pantry with such force that hair was pulled from her head. Another time she was penetrated in a shower with a device fashioned from a plastic spoon, tampons and a rubber glove.

Yet none of those attacks were reported by corrections officers.

"In Rape Case at Rikers: Did Guards Turn a Blind Eye?", New York Times, September 21, 2017, https://www.nytimes.com/2017/09/21/nyregion/rikers-rape-case-guards.html.

63. On November 30, 2017, NPR published an article titled: "Despite Scrutiny, Rikers Island's 'Culture of Violence' Persists, Report Says." The article can be found here: https://www.npr.org/2017/11/30/559846083/despite-scrutiny-rikers-islands-culture-of-violence-persists-report-says.

64. In this article, NPR reported on the Fourth Report of the *Nunez* Independent Monitor, which was ordered in 11 CV 5845 (LTS)(JCF). A PDF of the published report is linked through the NPR article and can also be found here: https://apps.npr.org/documents/document.html?id=4173501-Fourth-Monitor-Report-as-Filed-Nunez.

65. The *Nunez* Report was authored by an independent panel which was tasked with analyzing changes by the NYC DOC, to see if correction staff's use of unnecessary force was reduced.

66. In 2011, a group of Rikers detainees filed *Nunez*: a lawsuit against the CITY and the DOC, alleging cruel and unusual punishment. In 2013 the lawsuit was filed as a class action. In 2015, the Justice Department intervened, and a consent settlement was reached, which included more than 300 provisions the CITY and the DOC were ordered to implement. A

copy of the Consent Judgment can be found here: https://www.clearinghouse.net/chDocs/public/JC-NY-0055-0009.pdf.

67. The required changes included, but were by no means limited to, the directive the CITY and the DOC improve internal policies, implement more conflict resolution training for staff, more security cameras, and enforced disciplinary actions for staff violating use of force guidelines.

68. To make sure that the *Nunez* directives were implemented, the United States District Court for the Southern District of New York organized a monitoring group to audit the Rikers facilities. The monitoring group produced the 2017 *Nunez* report.

69. Despite the *Nunez* Consent Judgment, Rikers is still a violent and dangerous place where assaults on inmates are the norm. According to the *Nunez* report "[t]he circumstances related to particular incidents suggest that some [Rikers] Staff relish confrontation rather than act to avoid it. Confrontation avoidance appears to be anathema to many supervisors and line Staff, and is far too often not even put into play." *Nunez* Report at page 8.

70. NPR reported that the *Nunez* report "has fueled calls to shut down the [Rikers] jail complex because of its level of violence."

71. In *Shaun Reed v. The City of New York, et al.,* 18 CV 3097 (JPO), Plaintiff Shaun Reed sued the City of New York, several Rikers DOC employees, correction officers, and medical personnel, alleging that they facilitated his assault and beating by other inmates and then failed to provide any medical treatment to him. Specifically, Mr. Reed's Complaint recounts several incidents which resulted in a fractured jaw and broken nose inflicted by other Rikers inmates, facilitated by the correction officer Defendants. The Defendants eventually paid Mr. Reed a monetary settlement in this case.

72. On December 14, 2019, The New York Times again reported on persistent sexual assault and

rape by Rikers guards, reporting that

> Two correction officers and their supervisor walked the woman from an intake
> area to an isolated room in an abandoned area of the Rikers Island jail. There,
> according to a lawsuit, she was stripped of her clothing, handcuffed to a toilet
> fixture and sexually assaulted for several hours.
>
> The woman said her attackers included a correction captain and two officers, who
> raped her and penetrated her with a flashlight. They forced her to perform oral sex
> and rub one officer's genitals. She was also compelled to drink soapy liquid, she
> said, and the officers pepper-sprayed her genitals.
>
> The next day, she said, a correction officer took her from the isolated area to a
> housing unit in the jail and warned: "This never happened. If it is being heard
> upstairs, things are going to be worse."

"She Says Rikers Guards Raped Her, Then Warned: 'This Never Happened'", New York Times,
December 14, 2019, https://www.nytimes.com/2018/12/14/nyregion/rikers-rape-guards-federal-
lawsuit.html.

73. On February 11, 2019, The Intercept reported on the Rikers rape of Jane Doe, a woman who

won a settlement from the City after she was raped by a guard. "Rape Victim Who Smuggled

DNA Evidence Out of Rikers Wins Settlements"; https://theintercept.com/2019/02/11/rikers-

island-sexual-assault-rape/.

74. In the article, The Intercept reported that

> Women to whom rape and sexual assault at the hands of guards have become
> an almost routine component of life at Rikers know they probably won't be
> believed if they report their abusers. Worse, they fear that jail staff will cover
> up their allegations and retaliate against them. So when Jane Doe was brutally
> assaulted during a second stint at Rikers in 2015, she took no chances trusting
> the system.
>
>  . . .
>
> The guard who sexually assaulted Jane Doe, Jose Cosme, had ejaculated onto
> her breasts. Back in her cell after the assault and still in shock, Jane Doe used a
> white T-shirt to wipe it off. Then she called for medical help and told a nurse
> that the officer had hurt her. Without examining her, a doctor decided that she
> was having a panic attack and instructed the nurse to "put ice on her," then sent
> her back to her cell after less than 10 minutes. There, Jane Doe ripped the white

T-shirt she had used to clean up and later that night, she went to an office at the jail where she worked a cleaning shift and mailed one piece of the shirt to her sister and another to a friend. Days later, during a visit, she gave that same friend another shirt she had been wearing at the time of the assault.

75. On September 17, 2019, Politico published an article titled "New Stats Show Surge in Violence at Rikers Island," which can be found here: https://www.politico.com/states/new-york/albany/story/2019/09/17/new-stats-show-surge-in-violence-at-rikers-island-1193798

76. In this article, it was reported that "[v]iolence has spiked at Rikers Island, even as the city moves to shutter the jail complex and replace it with smaller local facilities."  The article further reported as follows:

> Despite millions of dollars invested in efforts to stem persistent violence, statistics released Tuesday in the Mayor's Management Report show that inmate attacks on other inmates, assaults on staff and use of force by guards against inmates have risen significantly at all city jails — though most of the roughly 8,000 inmates are housed at Rikers.
>
> Violence between inmates surged to 69.5 incidents a month for every 1,000 people in the jail population during the 2019 fiscal year, from 55.8 incidents the year before. Serious injuries in those attacks also jumped, from 2 to 2.5.

77. These aforementioned cases, articles, media and governmental reports provide just a glimpse into the well-known violent culture at Rikers Island – which is infamous for its inhumane and deadly treatment of inmates, many of whom, like plaintiff Gaines, are incarcerated or detained there on minor violations or low level offenses.

78. The aforesaid customs, policies, usages, practices, procedures and rules of the CITY and the DOC directly cause, *inter alia*, the following unconstitutional practices:

  i.    using force against inmates regardless of an objectively reasonable basis;

  ii.   exhibiting deliberate indifference and reckless disregard for the safety of inmates with regard to assault by other inmates;

14

     iii.     causing the prolonged solitary confinement of individuals confined to the New York City Department of Correction in order to justify the impact of the Defendants' violent and overly punitive activity;

     iv.     falsifying evidence and testimony to support those assaults and placements in solitary confinement;

     v.     falsifying evidence and testimony to cover up correction officers' misconduct.

79. The foregoing customs, policies, usages, practices, procedures and rules of the CITY and the DOC constitute a deliberate indifference to the safety, well-being and constitutional rights of GAINES.

80. The foregoing customs, policies, usages, practices, procedures and rules of the CITY and the DOC were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

81. The foregoing customs, policies, usages, practices, procedures and rules of the CITY and the DOC were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

82. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the CITY and the DOC, Plaintiff was severely injured.

83. Defendants collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

84. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate corrections officer, and were directly responsible for the violation of Plaintiff's constitutional rights.

85. All of the foregoing acts by Defendants deprived Plaintiff of federally protected constitutional rights, particularly by way of Defendants' deliberate indifference to Plaintiff's

well-being.

### AS A THIRD CAUSE OF ACTION
### AGAINST DEFENDANT ROACH AND
### THE INDIVIDUAL CORRECTION OFFICER DEFENDANTS
### FOR VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS AND
### PLAINTIFF'S RIGHT TO DUE PROCESS
### PURSUANT TO 42 U.S.C. SECTION 1983

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. Defendants are liable to Plaintiff for violation of her due process rights because Defendants refused to follow their own policies because of Plaintiff's status as a female rape victim, or perceived status as such.

88. It was precisely because of Plaintiff's minority status the Defendants refused to afford Plaintiff the same rights which they have consistently afforded to other incarcerated persons requiring medical attention.

89. In this way, the Defendants unconstitutionally ignore the medical needs of Plaintiff in violation of their own policies and requirements that victims of assault received medical treatment.

90. Defendants conduct was inconsistent with their own policies, procedures, and rules, and Plaintiff, because of her minority status as a black woman and rape victim, was not afforded the benefit or access to Defendants' policies, procedures, and rules, which are made available to other Rikers inmates whom the Defendants deem to be members of classes other than Plaintiff.

91. Thus, the Defendants, government employees and agents, violated their own policies, procedures, and rules, and failed to follow their own policies, procedures, and rules.

16

92. By so doing, the INDIVIDUAL CORRECTION DEFENDANTS and DEFENDANT ROACH subjected plaintiff to violations of her right to due process and thereby violated and aided and abetted in the violations of plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

93. By reason thereof, the INDIVIDUAL CORRECTION DEFENDANTS and DEFENDANT ROACH have violated 42 U.S.C. Section 1983 and caused plaintiff to suffer the deprivation of her liberty, loss of her constitutional rights, physical injuries, and mental anguish.

**AS A FOURTH CAUSE OF ACTION**
**AGAINST DEFENDANT ROACH AND**
**THE INDIVIDUAL CORRECTION OFFICER DEFENDANTS**
**FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**
**PURSUANT TO 42 U.S.C. SECTION 1983**

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

95. Defendant ROACH and the INDIVIDUAL CORRECTION OFFICER DEFENDANTS failed to provide plaintiff with timely medical attention despite their knowledge that plaintiff was suffering from the effects of a sexual assault and rape which occurred while in the custody of the defendants.

96. Defendant ROACH's and the INDIVIDUAL CORRECTION OFFICER DEFENDANTS' actions constituted unnecessary and wanton infliction of pain.

97. By their conduct and actions in failing to provide medical treatment to plaintiff TIFFANY GAINES, who was suffering from the physical effects of rape and sexual assault by another inmate, and by failing to intervene to prevent the complained of conduct, defendant ROACH and the INDIVIDUAL CORRECTION OFFICER DEFENDANTS, acting under color of law and without justification, intentionally, and/or with deliberate indifference to or a reckless

17

disregard for the natural and probable consequences of their acts, caused injury and damage to plaintiff's constitutional rights as guaranteed under 42 U.S.C. Section 1983 and the United States Constitution, including its Fourth, Eighth, and Fourteenth Amendments, including plaintiff's right to due process.

98. As a result of the foregoing, plaintiff TIFANNY GAINES, suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of her constitutional rights as guaranteed under 42 U.S.C. Section 1983.

**AS A FIFTH CAUSE OF ACTION
AGAINST THE CITY OF NEW YORK AND THE
NEW YORK CITY HEALTH AND HOSPITALS CORPORATION
FOR MUNICIPAL LIABILITY
FOR VIOLATION OF CIVIL RIGHTS
PURSUANT TO 42 U.S.C. SECTION 1983**

99. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

100.    For decades before Plaintiff's incarceration at Rikers Island, the CITY, DOC, and HHC were aware of the routine, dangerous, and unconstitutionally deliberate indifference by corrections officers and medical providers in the CITY's jails to the medical health of inmates and incarcerated individuals with serious illnesses or inmates and incarcerated persons who had been subjected to assault and battery.

101.    For years prior to the subject incident, the CITY, DOC, and HHC all knew that the medical failures that led to Plaintiff not being treated for her injuries stemming from the rape were chronic problems at Rikers and allowed them to persist.

102.    Each year, the CITY evaluated the performance of health care in New York City jails. Beginning in at least 2008, these reviews showed that medical charts were not adequately

completed, medical notes were often not filed, documentation concerning chronic problems and test results was regularly missing from patients' files, care was frequently not delivered without any refusal of care from being placed on file, preventable hospitalizations resulted from insufficient documentation for patients with chronic problems and failures to appropriately assess treatment plans, and patients were not timely seen or were not seen at all for chronic care visits.

103.    These are only a few examples of the CITY's, the DOC's, and HHC's chronic deliberate indifference to the medical needs of inmates and their failure to take sufficient measures to curb the abuse that is directed daily toward inmates at Rikers Island. The CITY, the DOC, and HHC have allowed that abuse and neglect to persist through inadequate, training, oversight, and discipline.

104.    During the time Plaintiff was detained at Rikers Island, as the CITY knew or should have known, medical and mental health providers at Rikers – including DOC staff – routinely failed to conduct adequate rounds or clinical examinations of their patients, routinely failed to accurately maintain or review patients' charts, and routinely denied patients access to needed doctors and medication, all of which placed the health and lives of incarcerated patients at risk. These are the very practices that injured Plaintiff and caused her to suffer. Plaintiff endured the pain and suffering described herein in part because the CITY, the DOC, and HHC medical and mental health providers failed to provide her with adequate medical care.

105.    On November 17, 2015, the CITY paid $5.3 million to end lawsuits of two Rikers Inmates' Deaths.

106.    The New York Times reported on these lawsuits and settlements, describing the cases as follows:

The family of Jason Echevarria, a 25-year-old inmate who died in 2012 after swallowing a toxic soap packet and, a federal jury found, being ignored by jail staff for hours as he pleaded for help, will receive $3.8 million. Mr. Echevarria was one of several Rikers inmates with mental illness to die in recent years, and his case helped draw the attention to abuse and dysfunction at city jails.

City officials also announced that a lawsuit brought on behalf of another inmate, Carlos Mercado, had been settled for $1.5 million. Mr. Mercado, 45, died in 2013 of complications from diabetes within 15 hours of being brought to Rikers. Surveillance video from the jail published in September by The New York Times showed Mr. Mercado walking unsteadily while carrying a bag holding what lawyers for his family said was his own vomit. At one point on the video, he can be seen falling to the floor and lying there for three minutes while correction officers step over him.

"City to Pay $5.3 Million to End Suits Over 2 Rikers Inmates' Deaths", November 17, 2015, New York Times, https://www.nytimes.com/2015/11/18/nyregion/rikers-inmate-jason-echevarria-wrongful-death-lawsuit-settlement.html.

107.    On March 18, 2019, NPR published an article based on its conversations with Dr. Homer Venters, who spent nine years overseeing the care of inmates at Rikers Island as the head of New York City's correctional health services.   "Former Physician at Rikers Island Exposes Health    Risks    of    Incarceration";    https://www.npr.org/sections/health-shots/2019/03/18/704424675/former-physician-at-rikers-island-exposes-health-risks-of-incarceration.

108.    According to the article, Dr. Venters stated that Rikers medical professionals often could not even find patient inmates who needed medical care because of the delays in paperwork and because of Rikers' antiquated paper logging system.

109.    These aforementioned cases, articles, media and governmental reports provide just a glimpse into the notorious lack of adequate medical treatment at Rikers Island – which is infamous for its inhumane and deadly treatment of inmates, many of whom, like plaintiff Gaines, are incarcerated or detained there on minor violations or low level offenses.

110.    At the time of PLAINTIFF GAINES incarceration at Rikers, the CITY and HHC knew that its deliberate strategy of cutting costs by, among other things, understaffing facilities, inadequately screening and training employees, and denying patients access to needed care, placed those in its care at serious risk of grave illness. The City likewise knew or should have known of the CITY and HHC's harmful practices, but they disregarded the wellbeing of the individuals in their custody.

111.    At all times material to this complaint, defendants THE CITY OF NEW YORK and HHC, had *de facto* policies, practices, customs, and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

112.    At all times material to this complaint, defendant THE CITY OF NEW YORK and HHC, failed to properly train, screen, supervise, or discipline employees, and failed to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline the INDIVIDUAL DEFENDANTS of the CITY, and HHC.

113.    At all times material to the complaint, the defendants THE CITY OF NEW YORK and HHC, failed to put adequate policies in place concerning the treatment and testing of rape and assault victims while in custody, and failed to properly train officers and employees concerning such assessment and treatment.

114.    At all times material to this complaint, defendants THE CITY OF NEW YORK and HHC, failed to provide adequate medical care to detainees.

115.    The policies, practices, customs, and usages, and the failure to properly train, screen supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of plaintiff TIFFANY GAINES' constitutional rights as guaranteed under 42 U.S.C. Section 1983 and the United States Constitution, including its Eighth and Fourteenth Amendments.

116.   At all times material to this complaint, Defendants the CITY, the DOC, and HHC, had *de facto* policies, practices, customs, and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

117.   As a result of the foregoing, plaintiff TIFFANY GAINES suffered conscious pain and suffering, damage, and injury.

### AS A SIXTH CAUSE OF ACTION
### FOR NEGLIGENCE
### PURSUANT TO NEW YORK STATE LAW

118.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

119.   That at all times hereinafter mentioned, the defendant CITY OF NEW YORK assumed responsibility, supervision, and authority over the DOC and its agents, servants and employees, and is liable to plaintiff for the acts complained of herein under the theories of vicarious liability and *respondeat superior*.

120.   The acts complained of herein resulted from the defendant CITY OF NEW YORK, through its agents, servants, and employees, breaching its duty to properly assign, train, supervise or discipline its DOC personnel, including medical personnel.

121.   The defendant CITY OF NEW YORK's failure to properly assign, train, supervise or discipline its employees, including the personnel involved herein, constitutes acquiescence in, and tolerance of, ongoing unconstitutional conduct and created the atmosphere allowing defendants to believe they could, with impunity, allowing plaintiff GAINES to be attacked, sexually assaulted, and raped.

122.   The defendant CITY OF NEW YORK's failure to properly assign, train, supervise or discipline its employees, including the medical personnel involved herein, constitutes

acquiescence in, and tolerance of, ongoing unconstitutional conduct and created the atmosphere allowing defendants to believe they could, with impunity, delay essential medical treatment for serious medical injuries stemming from rape and sexual assault.

123.    By reason of the foregoing, defendant CITY OF NEW YORK, its agents, servants and employees failed and refused to use such care in the performance of their duties as reasonably prudent employees would have used under similar circumstances.

124.    As a result of the foregoing, plaintiff TIFANNY GAINES, suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of her rights.

125.    Plaintiff is entitled to the maximum amount allowed under the law.

**AS A SEVENTH CAUSE OF ACTION
AGAINST THE DEFENDANT CITY OF NEW YORK FOR
_RESPONDEAT SUPERIOR_**

126.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

127.    The defendant CITY OF NEW YORK employed the individual CORRECTION OFFICER DEFENDANTS and is therefore vicariously liable for the actions and inactions of those individual defendants.

128.    In the alternative, defendant CITY OF NEW YORK negligently employed or supervised the individual CORRECTION OFFICER DEFENDANTS.

129.    As a result of the foregoing, plaintiff TIFANNY GAINES, suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of her rights.

**AS AN EIGHTH CAUSE OF ACTION
AGAINST THE INDIVIDUAL CORRECTION OFFICER DEFENDANTS**

**FOR ASSAULT**

130.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

131.    As alleged herein, the individual CORRECTION OFFICER DEFENDANTS intentionally placed plaintiff in fear of imminent harmful and offensive contact by intentionally placing her inside a locked cell with inmate Brandon Lee.

132.    As a result of the foregoing, plaintiff TIFANNY GAINES, suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of her rights.

**AS A NINTH CAUSE OF ACTION
AGAINST DEFENDANT BRANDON LEE
AND THE CORRECTION OFFICER DEFENDANTS
FOR ASSAULT, BATTERY, AND RAPE OF PLAINTIFF**

133.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

134.    Defendant BRANDON LEE subjected Plaintiff to assault, battery, and rape as described herein.

135.    The individual correction officer defendants conspired with defendant Brandon Lee as alleged herein to subject Plaintiff to assault, battery, and rape as described herein.

136.    As a result of the foregoing, plaintiff TIFFANY GAINES, suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of her rights.

**JURY DEMAND**

137.    Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.     Awarding compensatory damages against all Defendants in an amount to be determined at trial;

B.     Awarding punitive damages against the individual Defendants in am amount to be determined at trial;

C.     Awarding reasonable attorneys' fees and costs under 42 U.S.C. Section 1988; and

D.     Awarding such other and further relief as the jury may deem just and proper, together with attorneys' fees, interest, costs, and disbursements of this action.

E.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful conduct.

Dated: New York, New York
          April 11, 2020

                                        JESSICA MASSIMI, ESQ.

                                              /s/
                        By:     _____
                                        99 Wall Street, Suite 1264
                                        New York, NY 10005
                                        Jessica.Massimi@gmail.com
                                        646-241-9800
                                        JM - 2920

25